**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**


UNIVERSITY OF SOUTH ALABAMA     :
d/b/a USA HOSPITALS,

                                 :

      Plaintiff,

vs.                                :      CA 05-00275-C


SOUTHERN FARM BUREAU        :
CASUALTY INSURANCE COMPANY
d/b/a MISSISSIPPI FARM BUREAU,     :
et al.,

                                   :

      Defendants.

**<u>MEMORANDUM OPINION AND ORDER</u>**

      This cause is before the Court on defendant Southern Farm Bureau

Casualty Insurance Company's (hereinafter, "Mississippi Farm Bureau") motion

to dismiss for lack of *in personam* jurisdiction, or in the alternative to transfer

venue (Doc. 6; *see also* Doc. 7 (brief in support of motion to dismiss)),

defendant Virginia G. Hamilton's motion to dismiss for lack of *in personam*

jurisdiction, or in the alternative to transfer venue (Doc. 9; *see also* Doc. 10

(corrected brief in support of the motion to dismiss); *see* Doc. 8 (Hamilton's

affidavit is attached to this document)), plaintiff's response to the defendants'

motions (Doc. 18; *see also* Doc. 22 (affidavit of David J. Maloney, Esquire)),

the defendants' rebuttal memorandum (Doc. 19), and the parties' oral arguments

on June 29, 2005. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings, including disposition of this motion. (*See* Doc. 23 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, including the trial, and order the entry of a final judgment, and conduct all post-judgment proceedings.")) Upon consideration of the contents of the briefs, all pertinent materials submitted in support of the briefs, and the arguments of counsel, the Court **DENIES** the defendants' motions to dismiss.

## FINDINGS OF FACT

1.      On October 2, 2004, defendant Roosevelt Jackson, a resident of Mississippi, was injured as a result of a collision with defendant Virginia Hamilton, also a resident of Mississippi, in Moss Point, Mississippi. (Doc. 1, at ¶¶ 3-4 & 7; *see also* Doc. 8, Affidavit of Virginia G. Hamilton, at ¶ 3) Immediately following the collision, Jackson was transported to the University of South Alabama Medical Center in Mobile, Alabama  for treatment of his injuries. (Doc. 1, at ¶¶ 9-10) By the time of his release from the hospital, on November 22, 2004, Jackson had incurred hospital charges in the amount of $175,812.64. (*Id.* at ¶ 10)

2.      On November 30, 2004, plaintiff filed a notice of hospital lien in the Probate Court of Mobile County, Alabama. (*Id*. at ¶ 11; *see also* Doc. 18, Exhibit D, Affidavit of Teresa Englestead) Sometime after plaintiff filed its notice of hospital lien, Jackson's attorney, David J. Maloney, Esquire, contacted the Manager of Credit and Collections at USA Hospitals, Teresa Englestead, "requesting compromise on the hospital lien." (Doc. 18, Exhibit D, Englestead's aff.)

> I responded to him on 1 February 2005, and received correspondence from him 2 February 2005. When I could not get a commitment from Mr. Maloney to comply fully with the hospital lien, I referred the matter to our counsel Thomas R. Boller on 21 February 2005.

(*Id*.)

3.      At the time of the collision with Jackson, Hamilton was insured by Mississippi Farm Bureau. (Doc. 1, at ¶ 8) In November of 2004, James Corley, a Claims Representative for Mississippi Farm Bureau, began corresponding with David J. Maloney, a partner in the Mobile, Alabama law firm of Maloney-Strohmeyer, regarding Jackson's claim to be recompensed for his injuries suffered in the collision with Hamilton. (*See* Doc. 18, Exhibits E & F; Doc. 22, Affidavit of David J. Maloney)[1] Maloney corresponded with Corley on

---

[1]      Jackson retained the Maloney-Strohmeyer law firm on November 4, 2004. (Doc. 22, Maloney aff.)

November 18, 2004, December 6, 2004, and January 19, 2005 (Doc. 19,

Exhibits A-C); Corley responded to Maloney's first two letters by letters dated

November 24, 2004 and January 17, 2005 (Doc. 18, Exhibits E & F).[2]

> Throughout my settlement communications with Mr. Corley, we
> discussed Mr. Jackson's condition as well as his substantial
> University of South Alabama Hospital bill and lien. It was his
> position that since Mississippi does not recognize hospital liens,
> such would not apply to his company in Mr. Jackson's case.
> Accordingly his company did not seek a hold harmless letter nor
> require the hospital's endorsement on any check.

(Doc. 22, Maloney aff.)

    4.     On February 1, 2005, Jackson executed, in Mobile, Alabama, a

Final Release and Settlement of Claim arising out of the collision with

Hamilton. (Doc. 18, Exhibit G) In exchange for the sum of $25,000, Jackson

agreed to release all claims against Hamilton and her insurer, Mississippi Farm

Bureau, arising out of the aforementioned October 2, 2004 collision. (*See id.*)

The $25,000 check issued in settlement of Jackson's claim was issued by

---

[2]    It is also clear that Corley and Maloney spoke by telephone on at least one occasion in
November of 2004. (Doc. 18, Exhibit F ("Please let this letter serve as written confirmation of the
conversation we had on or about November 19, 2004, and serves to follow up the written
correspondence on November 24, 2004, in which we spoke about the accident your client, Mr.
Rossevelt Jackson, was involved in with our insured, Ms. Virginia G. Hamilton, on or about October 2,
2004."); *see also* Doc. 19, Exhibit C ("As per our November 19, 2004 telephone conversation and
your November 24, 2004 letter to this office, attached please find copies of some of Mr. Roosevelt
Jackson's billing statements for medical treatment he received for the injuries he sustained due to your
insured's negligent, reckless and/or wanton operation of a motor vehicle on or about October 2,
2004."))

Mississippi Farm Bureau. (*See* Doc. 18, Exhibit H) It is clear that during the settlement negotiations "Mississippi Farm Bureau Casualty was acting as agent[] for the Hamiltons." (Doc. 18, Exhibit I)

     5.     On April 20, 2005, Englestead penned the following letter to the Mississippi Farm Bureau state office:

> The Credit and Collections department of the University of South Alabama Hospitals has been advised that you are considering settlement with the above patient. This letter is forwarded to advise you that U.S.A. Hospitals filed a hospital lien according to the hospital lien statute found at Section 35-11-370, et seq., Code of Alabama, 1975. As information, and to assist you, we are providing a copy of the subject perfected lien.
>
> Under the lien law, the hospital has a priority claim on any judgments, settlements, or settlement agreements, and we wish to advise you of the lien and of our interest at this time. Therefore, if there are any monies received from litigation or through settlement agreements, we would expect that the lien statute would be followed.
>
> Any acceptance of a release or satisfaction of any such action, claim, counterclaim, demand or judgment and any settlement of any of the foregoing in the absence of a release or satisfaction of the lien referred to in this division shall prima facie constitute an impairment of such lien, and the lienholder shall be entitled to a civil action for damages on account of such impairment, and in such action may recover from the one accepting such release or satisfaction or making such settlement the reasonable costs of such hospital care, treatment and maintenance.

(Doc. 19, Exhibit D) Corley, on behalf of Mississippi Farm Bureau, responded to Englestead's letter by letter dated May 2, 2005, same reading in relevant part

as follows: "I would like to bring to your attention that Mr. Roosevelt (sic) is []
represented by Maloney & Strohmeyer, Attorneys & Counselors at Law, with
an address of 601 Church Street, Mobile, Alabama 36602. Before this dated
letter, we settled with Mr. Maloney on behalf of his client, Mr. Roosevelt
Jackson, for Farm Bureau's policy limit in this case. In conversations with him,
he stated that he was in negotiations with USA Hospital Systems on negotiating
the bill. You may want to direct further correspondence to him at the above
listed address." (Doc. 19, Exhibit E)

      6.     On May 12, 2005, USA Hospitals filed the instant suit against
Mississippi Farm Bureau, Hamilton and Jackson seeking to recover the
$175,812.64 in hospital charges incurred by Jackson in the course of his
treatment at USA Medical Center. (Doc. 1) Count One of the complaint is a
statutory cause of action created by § 35-11-372 of the Alabama Code and is
asserted against all three defendants due to their impairment of plaintiff's lien
and damages suffered on account of such impairment. (Doc. 1, ¶¶ 13-15)[3]

      7.     In support of its motion to dismiss for lack of *in personam*
jurisdiction, Mississippi Farm Bureau filed the affidavit of its District Claims
Manager, Stacy N. Crosby. (Doc. 6, Affidavit of Stacy N. Crosby)

---

[3]     Counts Two and Three are asserted solely against Jackson. (*See id*. at ¶¶ 16-17)

3.      That Southern Farm Bureau Casualty Insurance Company d/b/a Mississippi Farm Bureau, is a Mississippi corporation existing by virtue of the laws of the State of Mississippi.

4.      That Southern Farm Bureau Casualty Insurance Company d/b/a Mississippi Farm Bureau, to the best of my knowledge and from my research of company records does not and has not done business in the State of Alabama.

5.      That Southern Farm Bureau Casualty Insurance Company d/b/a Mississippi Farm Bureau, is not and has not ever been registered or otherwise licensed to do business in the State of Alabama.

6.      That I am not aware of Southern Farm Bureau Casualty Insurance Company d/b/a Mississippi Farm Bureau, ever having any contacts with the State of Alabama.

7.      That Southern Farm Bureau Casualty Insurance Company d/b/a Mississippi Farm Bureau, does not have a registered agent for service of process in the State of Alabama.

8.      That Southern Farm Bureau Casualty Insurance Company d/b/a Mississippi Farm Bureau's business operations are conducted in the State of Mississippi and do not involve the State of Alabama.

9.      That Southern Farm Bureau Casualty Insurance Company d/b/a Mississippi Farm Bureau, does not own property in the State of Alabama.

10.     That Southern Farm Bureau Casualty Insurance Company d/b/a Mississippi Farm Bureau, does not have a business office in the State of Alabama.

11.     That Southern Farm Bureau Casualty Insurance Company d/b/a Mississippi Farm Bureau does not advertise in Alabama's newspapers, publications, or television channels.

7

1[2].   That Southern Farm Bureau Casualty Insurance Company d/b/a Mississippi Farm Bureau does not employ any personnel in Alabama to conduct business on its behalf.

1[3].   That Southern Farm Bureau Casualty Insurance Company d/b/a Mississippi Farm Bureau has never received funds from the State of Alabama for any work performed, whether domestic or foreign.

1[4].   That Southern Farm Bureau Casualty Insurance Company d/b/a Mississippi Farm Bureau has never maintained bank accounts of any kind in the State of Alabama.

1[5].   That Southern Farm Bureau Casualty Insurance Company d/b/a Mississippi Farm Bureau has never held meetings of officers, directors, or shareholders in the State of Alabama.

1[6].   That Southern Farm Bureau Casualty Insurance Company d/b/a Mississippi Farm Bureau has never knowingly entered into any contractual relationships with any entity domiciled in the State of Alabama.

1[7].   That Southern Farm Bureau Casualty Insurance Company d/b/a Mississippi Farm Bureau has never executed any contract instruments in the State of Alabama.

1[8].   That none of Southern Farm Bureau Casualty Insurance Company d/b/a Mississippi Farm Bureau's administrative functions are performed in the State of Alabama.

[19].   That Southern Farm Bureau Casualty Insurance Company d/b/a Mississippi Farm Bureau[] had no contacts and dealings with the Plaintiff, University of South Alabama d/b/a USA Hospitals, to the extent there were any, and all contacts with the Plaintiff's patient, Roosevelt Jackson, were conducted in the State of Mississippi and were to be performed in the State of Mississippi.

(*Id*. at ¶¶ 3-19)

8.      In support of her motion to dismiss, Hamilton has provided the following testimony by affidavit:

     1.      My name is VIRGINIA G. HAMILTON, and I am an adult resident citizen of Jackson County, Mississippi, and my address is 3205 Indiantown Road, Pascagoula, Mississippi, 39581.

.     .     .

     3.      That I was involved in an automobile accident with Roosevelt Jackson that occurred on October 2, 2004, in Moss Point, Mississippi.

     4.      That the vehicle that I was operating at the time of the accident was covered by a policy of liability insurance underwritten by Mississippi Farm Bureau Insurance Company.

     5.      That the claim against me was reported to Mississippi Farm Bureau Insurance Company, and from that point, I have had no further involvement in the matter.

     6.      That I have not had any contact with University of South Alabama d/b/a USA Hospitals.

     7.      That I have not participated or otherwise been involved in any settlement negotiations between Roosevelt Jackson, his attorney, or Mississippi Farm Bureau Insurance Company.

     8.      That I do not own property in the State of Alabama.

     9.      That I do not maintain bank accounts of any kind in the State of Alabama.

     10.      That I have never executed any contract instruments in the State of Alabama.

11. That I had no contacts and dealings with the Plaintiff, University of South Alabama d/b/a USA Hospitals, to the extent there were any.

(Doc. 8, Affidavit of Virginia G. Hamilton)

9. In response to the motions to dismiss filed by defendants Mississippi Farm Bureau and Virginia Hamilton, plaintiff, in addition to supplying evidence relating to the settlement between Mississippi Farm Bureau, as agent for the Hamiltons, and Roosevelt Jackson, has supplied evidence establishing that investigation and payment of claims is part of Mississippi Farm Bureau's ordinary business (Doc. 18, Exhibits J & K) and that Mississippi Farm Bureau has considered liens filed by Tennessee hospitals when investigating and settling claims (Doc. 18, Exhibit O).[4] Moreover, plaintiff has supplied evidence that Mississippi Farm Bureau has appeared as the plaintiff in four lawsuits filed in the Circuit Court of Mobile County, Alabama over the course of the last ten years. (Doc. 18, Exhibit N, Affidavit of Susan Wilson)

## CONCLUSIONS OF LAW

1. *In personam* jurisdiction in this action, against these non-resident defendants, is predicated upon Alabama's long-arm statute which, in part,

---

[4] "I don't know that we've not had claims where the lien -- where an Alabama hospital lien might have been satisfied as part of a claim or not. I don't have any personal knowledge of that." (*Id*.)

10

provides:

> An appropriate basis exists for service of process outside of this state upon a person or entity in any action in this state when the person or entity has such contacts with this state that the prosecution of the action against the person or entity in this state is not inconsistent with the constitution of this state or the Constitution of the United States[.]

Ala.R.Civ.P. 4.2(b).

2.      In a diversity action, like the present one (*see* Doc. 1, ¶ 5 ("Jurisdiction is proper pursuant to 28 USC § 1332(a)(1)."), "a federal court may assert jurisdiction over a nonresident defendant only to the extent permitted by the long-arm statute of the forum State, and only if the exercise of jurisdiction comports with the requirements of the Due Process Clause of the Fourteenth Amendment." *Vermeulen v. Renault, U.S.A. Inc.*, 975 F.2d 746, 753 (11th Cir. 1992), *opinion modified and superseded on other grounds by Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534 (11th Cir. 1993), *cert. denied sub nom. Regie Nationale des Usines Renault S.A. v. Vermeulen*, 508 U.S. 907, 113 S.Ct. 2334, 124 L.Ed.2d 246 (1993);  *see also Olivier v. Merritt Dredging Co., Inc.*, 979 F.2d 827, 830 (11th Cir. 1992) (panel of the Eleventh Circuit states that in determining whether a district court may assert personal jurisdiction depends upon whether the district court could obtain personal jurisdiction over the defendants pursuant to the applicable state long-arm statute

and whether the exercise of personal jurisdiction would violate the due process clause of the Fourteenth Amendment), *cert. denied sub nom. South Carolina Property & Casualty Ins. Guar. Ass'n v. Olivier*, 507 U.S. 983, 113 S.Ct. 1577, 123 L.Ed.2d 145, and *cert. denied sub nom. Louisiana Ins. Guar. Ass'n v. Olivier*, 508 U.S. 910, 113 S.Ct. 2342, 124 L.Ed.2d 252 (1993).  Where, as here, the courts of the forum State have interpreted the forum's long-arm statute to confer jurisdiction to the limits allowed by federal due process, *Mutual Service Ins. Co. v. Frit Industries, Inc.,* 358 F.3d 1312, 1319 (11th Cir. 2004) ("Alabama's long-arm statute authorizes Alabama courts to assert jurisdiction to the fullest extent constitutionally permissible.");  *Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*, 207 F.3d 1351, 1355-1356 (11th Cir. 2000) ("Alabama permits its courts to exercise jurisdiction over nonresidents to the fullest extent allowed under the Due Process Clause of the Fourteenth Amendment to the Constitution."); *Ex parte Georgia Farm Bureau Mutual Automobile Ins. Co.*, 889 So.2d 545, 550 (Ala. 2004) ("'"Rule 4.2, Ala.R.Civ.P., extends the personal jurisdiction of Alabama courts to the limits of due process under the federal and state constitutions."'")*; Ex parte Lagrone*, 839 So.2d 620, 623 (Ala. 2002) ("Rule 4.2, Ala.R.Civ.P., Alabama's long-arm rule, 'extends the personal jurisdiction of Alabama courts to the limits of due process under the federal and state constitutions.'"), state law need not be applied: this Court "need

12

only ask whether the exercise of jurisdiction over the nonresident defendant comports with due process." *Vermeulen, supra*, 975 F.2d at 753; *see also Olivier, supra*, 979 F.2d at 830 ("In interpreting the reach of the state's long-arm statute, the Supreme Court of Alabama has extended the jurisdiction of Alabama courts to the extent permissible under the due process clause of the Fourteenth Amendment. . . . Thus, in order to determine whether the district court in Alabama properly refused to exercise personal jurisdiction, we need only consider whether the exercise of jurisdiction would have satisfied the requirements of due process."); *Morris v. SSE, Inc.*, 843 F.2d 489, 492 n.3 (11th Cir. 1988) ("This case presents no need to examine Alabama's long-arm jurisdictional statute because that statute authorizes a court to assert personal jurisdiction to the limits of federal due process. . . . We recognize that it is well-established in this circuit that in a diversity case, a federal district court adjudicating a motion to dismiss for lack of personal jurisdiction must determine whether assertion of jurisdiction comports with both state law and the due process requirements of the United States Constitution. . . . However, where the forum's courts interpret the forum's long-arm statute to the limits of *federal* due process, we believe it is not necessary to apply state law; application of the federal *International Shoe* two-part analysis will suffice."); *see Mutual Service Ins. Co., supra*, 358 F.3d at 1319 ("[A]s the offshore insurers concede,

the sole contested issue in our personal jurisdiction analysis is whether Alabama's exercise of jurisdiction over the offshore insurers violates due process.").

       3.     A nonresident defendant is amenable to a forum's jurisdiction if "(1) it possesses sufficient minimum contacts with the forum State to satisfy due process requirements, and (2) the forum's exercise of jurisdiction comports with '"traditional notions of fair play and substantial justice."'" *Vermeulen, supra*, 975 F.2d at 754, quoting in part *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), in turn quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940). As stated in *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984) (citations omitted), "[d]ue process requirements are satisfied when in personam jurisdiction is asserted over a nonresident corporate defendant that has 'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."'" *See also Ruiz de Molina, supra*, 207 F.3d at 1356 ("The Due Process Clause permits a court to summon a nonresident to defend himself in the forum so long as that person has some 'minimum contacts' with that state and, the exercise of personal jurisdiction over the defendant would not offend 'traditional notions of fair play and

substantial justice.'").

      4.    "In assessing a defendant's 'minimum' contacts with the forum state, courts have distinguished between contacts establishing 'specific' and 'general' jurisdiction." *Chatham Steel Corp. v. Brown*, 858 F.Supp. 1130, 1146 (N.D. Fla. 1994) (citations omitted). When a cause of action is related to or arises out of a nonresident defendant's contacts with the forum, the Supreme Court has held that the "'relationship among the defendant, the forum and the litigation' is the essential foundation of in personam jurisdiction." *Helicopteros, supra,* 466 U.S. at 414, 104 S.Ct. at 1872, quoting *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed. 2d 683 (1977).

> Specific jurisdiction arises out of a party's activities in the forum that are related to the cause of action alleged in the complaint. It has long been recognized that a court has the minimum contacts to support specific jurisdiction only where the defendant "purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." The requirement that there be minimum contacts is grounded in fairness. It assures that "the defendant's conduct and connection with the forum State [is] such that he should reasonably anticipate being haled into court there."

*Consolidated Development Corp. v. Sherritt, Inc*., 216 F.3d 1286, 1291 (11th Cir. 2000) (internal citations omitted), *cert. denied*, 534 U.S. 827, 122 S.Ct. 68, 151 L.Ed.2d 34 (2001); *see also Madara v. Hall*, 916 F.2d 1510, 1516 n.7 (11th Cir. 1990) ("Specific personal jurisdiction is founded on a party's

contacts with the forum state that are related to the cause of action."). On the other hand, general jurisdiction derives from the defendant's contacts with the forum that are unrelated to the litigation. *Helicopteros, supra,* 466 U.S. at 414-415 n.9, 104 S.Ct. at 1872 n.9; *see also Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 473 n.15, 105 S.Ct. 2174, 2182 n.15, 85 L.Ed.2d 528 (1985) ("'Specific' jurisdiction contrasts with 'general' jurisdiction, pursuant to which 'a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum.'"); *Consolidated Development Corp., supra,* 216 F.3d at 1292 ("General personal jurisdiction, on the other hand, arises from a defendant's contacts with the forum that are unrelated to the cause of action being litigated."); *Madara, supra,* 916 F.2d at 1516 n.7 ("General personal jurisdiction arises from a party's contacts with the forum state that are unrelated to the litigation."). "The due process requirements for general personal jurisdiction are more stringent than for specific personal jurisdiction, and require a showing of continuous and systematic general business contacts between the defendant and the forum state." *Consolidated Development Corp., supra,* 216 F.3d at 1292.

5.      While plaintiff affirmatively states that this Court may exercise general personal jurisdiction over Mississippi Farm Bureau, and appears to intimate that the court may also exercise general personal jurisdiction over

16

Hamilton, this Court finds that USA Hospitals has not established that this Court may exercise general personal jurisdiction over either defendant. The mere fact that Mississippi Farm Bureau has been a plaintiff in the Circuit Court of Mobile County, Alabama four times over the course of the past ten years and that a representative of the corporation testified that there is a possibility that the company has also been a defendant in the State of Alabama is simply not evidence of systematic and continuous business contacts necessary for the exercise of general personal jurisdiction particularly in light of the evidence that the corporate defendant does no business in Alabama, is not licensed to do business in Alabama, has no registered agent for service of process in Alabama, owns no property in Alabama, has no business office in Alabama, does not advertise in Alabama, employs no personnel in Alabama in order to conduct business, maintains no bank accounts in Alabama, and has never held any meetings of its officers, directors or shareholders in Alabama. *See Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc*., 786 F.2d 1055, 1057 (11th Cir. 1986) ("We conclude that Lovett & Tharpe's contacts with Missouri were not so 'continuous and systematic' as to permit the exercise of general personal jurisdiction over them. Lovett & Tharpe is a Georgia corporation; all the officers are residents of Georgia; and Lovett & Tharpe is not licensed nor has it ever been licensed in Missouri. There is no evidence that Lovett & Tharpe has

an office or employees in Missouri, that they solicit business in Missouri, that they provide services or close sales in Missouri, that they sell products to Missouri purchasers, that they purchase products from Missouri sellers (other than in the instant transaction), or that they carry on any other activity there."); *Morris, supra*, 843 F.2d at 491 n.2 ("We proceed on a theory of specific personal jurisdiction. Snyder's uncontroverted December 8, 1986, affidavit clearly establishes that SSE's contacts with Alabama not related to this suit fail to meet the 'continuous and systematic' contacts required to establish general personal jurisdiction."). The general contacts Mississippi Farm Bureau has with Alabama which plaintiff has identified are sporadic and amorphous as opposed to systematic and continuous. Because plaintiff has not established that this Court may exercise general personal jurisdiction over Mississippi Farm Bureau, it is clear that the undersigned cannot find that it may exercise general personal jurisdiction over Virginia Hamilton under the agency theory espoused by plaintiff (*see* Doc. 18, at 2 ("Contacts sufficient for jurisdiction over Defendant Virginia G. Hamilton are based upon the Insuror's relationship as her agent, which is sufficient under Alabama Rule of Civil Procedure 4.2(a)(2). . . . The Insuror acted as agent for Defendant Hamilton, and its acts bind her for purposes

of jurisdiction[.]")).[5] Accordingly, the sole question for this Court becomes whether it may exercise specific personal jurisdiction over defendants Mississippi Farm Bureau and Hamilton.

   6. As alluded to earlier, specific jurisdiction focuses upon whether plaintiff's cause of action arises out of or relates to the non-residents' contacts with the forum state. *Rudzewicz, supra*, 471 U.S. at 472, 105 S.Ct. at 2182 ("Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this 'fair warning' requirement is satisfied if the defendant has 'purposely directed' his activities at residents of the forum . . ., and the litigation results from alleged injuries that 'arise out of or relate to' those activities[.]"). In this case, the Court can reach no other conclusion but that USA Hospitals' cause of action arises out of Mississippi Farm Bureau's contacts with Alabama. Plaintiff alleges that the defendants impaired its lien under Alabama Code § 35-11-372[6] by settling among themselves Jackson's insurance claim against Hamilton for the policy limits

---

[5] For her part, Hamilton has no contacts whatsoever with the State of Alabama. (*See* Doc. 8, Hamilton aff. (she owns no property in Alabama, maintains no bank accounts in Alabama, and has never executed any contract instruments in Alabama))

[6] "The purpose of Alabama's hospital-lien statute is, by giving a hospital an automatic lien for the reasonable value of its services, to induce it to receive a patient injured in an accident, without first considering whether the patient will be able to pay the medical bills incurred." *Ex parte University of South Alabama*, 761 So.2d 240, 244 (Ala. 1999).

despite defendants' knowledge of said lien. While the settlement of the claim was initiated by Jackson's Mobile attorney, David Maloney, Esquire, in accomplishing the ultimate release and settlement, Mississippi Farm Bureau sent several letters into Alabama addressed to Maloney and spoke to Maloney by telephone on at least one occasion. In addition, the Final Release and Settlement of Claim (Doc. 18, Exhibit G) executed in favor of Mississippi Farm Bureau and the Hamiltons is certainly a contract and that contract was executed in Alabama by Jackson (*id*.). In addition, Mississippi Farm Bureau sent a check in the amount of its policy limits, $25,000, into Alabama with the foregoing contract to settle Jackson's claim despite the defendant's knowledge of USA Hospitals' lien and its acknowledgment that it has considered hospital liens from at least one other state, that is, Tennessee, in investigating and settling insurance claims. The foregoing activities by Mississippi Farm Bureau were directed toward Alabama and arguably resulted in injury to USA Hospitals. Accordingly, the minimum contacts requirement exists for purposes of this Court's exercise of specific personal jurisdiction over Mississippi Farm Bureau.[7] Even if this Court had concluded that the foregoing contacts

---

[7]       While it is clear that Virginia Hamilton directed no activities or conduct toward Alabama, the Final Release and Settlement of Claim directly benefitted her as much as if did Mississippi Farm Bureau. (Doc. 18, Exhibit G ("FOR THE SOLE CONSIDERATION of TWENTY FIVE THOUSAND AND 00/100 Dollars ($25,000.00) to me/us in hand paid by SAMMIE

Mississippi Farm Bureau had with Alabama were insufficient to establish the minimum contacts requirement, the Court would nonetheless still exercise personal jurisdiction in this matter because "considerations of fair play and substantial justice counsel permitting the exercise of personal jurisdiction[.]" *Sun Bank, N. A. v. E. F. Hutton & Co., Inc.*, 926 F.2d 1030, 1034 (11th Cir.

---

HAMILTON AND VIRGINIA HAMILTON, DRIVER hereinafter called payor(s), the receipt of which is hereby acknowledged, I/we ROOSEVELT JACKSON AS A SINGLE INDIVIDUAL address 10300 CHARPENTIER DR MOSS POINT, MS 39562 being of lawful age, do hereby release, acquit and forever discharge the said payor(s), their agents and employees, and all other persons, firms or corporations who are or might be liable . . . .") In light of the clear deposition testimony of Hamilton's insured that it was acting as her agent during its settlement negotiations with Jackson's attorney, and recognizing that Alabama's long-arm statute confers jurisdiction to the limits allowed by federal due process, the Court finds that specific personal jurisdiction can be exercised over Hamilton based upon the acts of Mississippi Farm Bureau in negotiating and settling Jackson's claim in Alabama. *Cf. Tweet v. Webster*, 596 F.Supp. 130, 133 & 134 (D. Nev. 1984) ("[I]t is better practice to determine the agency relationship [between the insured and insurer] by examining the terms of the particular insurance policy. . . . The only document submitted to the Court which makes reference to the terms of the insurance policy is the affidavit of Robert Black submitted by defendant Webster. Mr. Black's affidavit indicates that he is the divisional claims manager for CSAA and that, according to the agreement between CSAA and all its insureds, CSAA assumes total control of and responsibility for investigation, adjustment, and settlement of a covered loss and that an insured has no input into CSAA negotiations or decisions concerning adjustment or settlement. A fair reading of the affidavit indicates that CSAA has complete control of the initiation and conduct of the settlement negotiations. . . . The evidence before the Court compels the conclusion that CSAA was not acting as Webster's agent during negotiations for settlement of the automobile claim. Therefore, the conduct of CSAA during investigation and settlement negotiations does not confer jurisdiction over Webster under NRS 14.065."); *Uebelacker v. Horace Mann Ins. Co.,* 500 F.Supp. 180, 182 (E.D. Wis. 1980) ( "A fair reading of this section [of the insurance policy] indicates that the insurer has control of the initiation and the conduct of settlement negotiations and that it is the decision of the insurer how, if at all, the insured shall participate. Thus the insurer, because it does not act at the request of the insured, does not act as his agent during the negotiations, and its conduct of negotiations does not confer personal jurisdiction over the insured on this court."). Accordingly, this Court is compelled to **DENY** defendant Hamilton's motion to dismiss for lack of *in personam* jurisdiction.

1991) (citation omitted); *see Rudzewicz, supra*, 471 U.S. at 477, 105 S.Ct. at 2184 ("These considerations [of fair play and substantial justice] sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required."); *Ruiz de Molina, supra*, 207 F.3d at 1358-1359 ("[B]ecause these considerations serve to establish the reasonableness of jurisdiction in this case, a lesser showing of minimum contacts than otherwise would be required is sufficient.").

7.   "In determining whether jurisdiction would comport with traditional notions of fair play and substantial justice, the courts look at: (a) the burden on the defendant, (b) the forum State's interest in adjudicating the dispute, (c) the plaintiff's interest in obtaining convenient and effective relief, (d) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (e) the shared interest of the several States in furthering substantive social policies." *Meier ex rel. Meier v. Sun International Hotels, Ltd.*, 288 F.3d 1264, 1276 (11th Cir. 2002) (citation omitted); *see Ruiz de Molina, supra,* 207 F.3d at 1358 ("Once it is decided that defendants have at least minimum contacts with a forum, the burden is on the defendants to show that the imposition of jurisdiction in the forum is unreasonable. Several factors are relevant to this showing: (1) the defendant's burden; (2) the forum state's interest; (3) the plaintiff's interest in convenient

and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering fundamental social policies.").

8.    It is clear to the Court that the defendants will not be significantly burdened by having to come to Alabama to defend USA Hospitals' suit given the availability of modern transportation and communication. *See Olivier, supra*, 979 F.2d at 834 ("[A]s the Supreme Court of the United States has noted '. . . modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity.' . . . The Supreme Court subsequently stated that the historical developments noted in *McGee* have only accelerated in the generation since that case was decided. . . . Requiring adjudication in Alabama will not impose a substantial burden on LIGA and SCIGA."); *Morris, supra*, 843 F.2d at 495 ("[M]odern transportation and communication have made it much less burdensome for a party sued to defend himself in a state where he engages in economic activity."). The claims representative who handled the settlement of Jackson's claim worked out of Gulfport, Mississippi, Hamilton resides in Pascagoula, Mississippi, and the defendants are represented in this action by a Pascagoula, Mississippi law firm. These cities are as close to Mobile, Alabama, where this Court sits, as cities within the Southern District of Alabama;

23

therefore, the defendants will not be burdened by having to come to this Court to defend this action. Second, Alabama has significant interests in adjudicating a lawsuit involving one of its residents who alleges it was injured in the forum state as a result of the actions of Mississippi Farm Bureau, as the admitted agent of Hamilton, in settling Jackson's claim without first taking into consideration plaintiff's lien. *See Andersen v. Sportmart, Inc.,* 57 F.Supp.2d 651, 662 (N.D. Ind. 1999) ("States have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors."). Third, USA Hospitals has a significant interest in obtaining convenient and effective relief and it does not appear to this Court that Mississippi would have as much interest, as would Alabama, in providing such relief since the injury to plaintiff occurred in Alabama as a result of the defendants' contacts with Alabama. *See Morris, supra*, 843 F.2d at 495 ("[O]btaining the most efficient resolution of the controversy suggests that Alabama is an appropriate forum for such a resolution. As the District Court for the Southern District of Mississippi noted when it transferred the case to the Southern District of Alabama, 'It appears that the Southern District of Alabama is the proper venue for this cause. It is where the alleged accident occurred, diversity jurisdiction exists, and a majority of witnesses reside.'"). Fourth, the witnesses and evidence about plaintiff's lien and the impairment of that lien by defendants in settling Jackson's insurance claim

24

are both in Alabama and Mississippi but given the close proximity of this Court to the Mississippi witnesses, efficient resolution of this case suggests that jurisdiction be asserted over the defendants in the Southern District of Alabama. *See Andersen, supra*, 57 F.Supp.2d at 663 ("In evaluating [the efficient administration of justice] factor, courts generally consider where witnesses and evidence are likely to be located."). Finally, allowing this case to proceed in Alabama will arguably further the policy and purpose behind § 35-11-372 of the Code of Alabama which is to encourage hospitals to receive a patient injured in an accident without first considering whether he will be able to pay the medical bills incurred.[8]

        9.     In light of the foregoing, this Court concludes that exercising personal jurisdiction over the defendants in this case would not be unreasonable or inconsistent with the notions of fair play and substantial justice.

        10.    Plaintiff has established not only that minimum contacts exist in Alabama over Mississippi Farm Bureau, as agent of Hamilton, such that this Court may exercise  specific personal jurisdiction over this matter, it has also established that exercising personal jurisdiction over the defendants in this case would comport with notions of fair play and substantial justice.

---

[8]    For this Court, these factors establish that venue is proper in this Court; therefore, the defendants' alternative, unsupported, requests that venue of this action be transferred are **DENIED**.

## CONCLUSION

The Court finds that the motions to dismiss filed by defendants Mississippi Farm Bureau (Doc. 6) and  Virginia Hamilton (Doc. 9) for want of *in personam* jurisdiction are due to be **DENIED** as are the alternative requests to transfer venue.[9]

**DONE** this the 27th day of July, 2005.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

---

[9]       USA Hospitals and defendant Roosevelt Jackson have filed a joint motion to dismiss. (Doc. 21) Plaintiff and Jackson have reached a settlement in this matter and pursuant to same and with respect to Jackson the Court **DISMISSES** Count I of the Complaint **WITH PREJUDICE**; Counts II and III are **DISMISSED WITHOUT PREJUDICE**.